COWLES v. ROCHESTER FOLDING BOX CO.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. PATENTS—CONTRACT TO ASSIGN—LACK OF CONSIDERATION.
   On leaving the employ of a corporation, an inventor assigned to third parties certain inventions and patents, without any consideration being paid therefor, in violation of his previous agreement to assign them to the corporation. He was subsequently re-employed under a contract whereby he was to procure a reassignment of the inventions and patents to the corporation and perform certain other services, and it was to assign to him a one-fourth interest at the end of a year's employment. The corporation was afterwards adjudged to have been the equitable owner of the patents all the time. *Held*, that its agreement to assign to the inventor a one-fourth interest in the patents at the end of the year was without consideration.

2. AGREEMENT TO FURNISH EVIDENCE—VALIDITY.
   An agreement by which a patentee is to furnish evidence for a third party in actions agreed to be brought against the assignees of the patentee to set aside his transfer of the patents to them is against public policy.

Appeal from Trial Term, Monroe county.

Action by Arthur D. Cowles against the Rochester Folding Box Company. Judgment for plaintiff, and defendant appeals. Reversed.

Appeal from a judgment entered in the office of the clerk of the county of Monroe on the 25th day of May, 1902, upon the decision of the court at a Trial Term of the Supreme Court held in and for said county, which directed the specific performance by the defendant of the contract set forth in the complaint, by providing that the defendant assign to the plaintiff a one-fourth interest in certain letters patent of the United States, and that the plaintiff recover the costs of the action. The action was commenced on the 5th day of August, 1901. The contract of which specific performance was asked is in writing, was duly executed by the parties, and bears date September 5, 1898. It provides, in substance, that the defendant, in consideration of an assignment to it by the plaintiff of all his interest in certain patents and inventions, which are fully set forth and are the same as are described in the judgment appealed from, agrees to employ the plaintiff as its inventor and foreman of its factory at Rochester, N. Y., for the term of one year from September 12, 1898, and thereafter during the mutual pleasure of the parties, at the weekly compensation of $35. The plaintiff agrees to work for the defendant upon the terms specified, and to assign to it his interest in such inventions and patents, and also that any other inventions made by him while in the employ of the defendant shall belong to it, and to do whatever may be necessary and proper to vest such patents in the defendant. The defendant further agreed that upon the termination of plaintiff's employment it would reassign to him a one-quarter interest in all inventions or patents which he might have assigned to it. Pursuant to such agreement the plaintiff made and executed assignments of such inventions and patents in form satisfactory to the defendant, which were accepted by it. Thereupon the plaintiff entered into the defendant's employ, and, so far as appears, faithfully discharged the duties of the same for the period of one year, when, by the terms of said contract, he had a right to terminate such employment, which he did, and demanded an assignment from the defendant of a one-quarter interest in said patents and inventions, which was refused, and he then commenced this action to compel such assignment to be made to him. The learned trial court decided that the plaintiff was entitled to an assignment from the defendant of a one-quarter interest in such patents in accordance with the terms of said contract, and judgment was directed accordingly, with costs.

---

¶ 2. See Contracts, vol. 11, Cent. Dig. § 617.

Argued before McLENNAN, SPRING, WILLIAMS, and HIS-
COCK, JJ.    ·

Elbridge L. Adams, for appellant.
Abraham Benedict, for respondent.

McLENNAN, J. The facts, so far as they bear upon the questions
involved upon this appeal, are not in dispute. The plaintiff, who was
an inventor and expert machinest, together with two other men,
Browne and Levis, about the year 1895 organized the defendant cor-
poration, with a capital stock of $200,000. Sixty thousand dollars of
the paid-up capital stock of the corporation was transferred to those
three individuals, upon the express consideration that they would
transfer to it their business, and all the machinery and tools owned by
them and used in connection therewith, which they did, and also in
consideration of their agreement to assign and transfer a certain pat-
ent for improvements in paper box machines which the plaintiff had
invented, as well as all future improvements, inventions, and patents
which might be invented by the plaintiff, relating to the business of ·
the corporation, during the time the plaintiff remained in its em-
ploy. After the organization of the defendant, and after the agree-
ment referred to had been made by the plaintiff and his associates,
he entered into the employ of the defendant at a considerable salary,
and devoted his time largely to inventing new machines and devices
for the better and more profitable conduct of its business; and while
thus in the employ of the defendant he made the inventions which are
the subject of the patents referred to in the judgment appealed from.

Under this arrangement the plaintiff continued in defendant's em-
ploy for about three years, and until about March, 1898, as did also
Browne, who assisted him in organizing the defendant and organized
or entered into the employment of a rival corporation in the city of
New York. During the three years the plaintiff was thus in the em-
ploy of the defendant he invented certain new and useful improve-
ments of value to the defendant in its business, which were then or
afterwards patented, and which are the same described in the judg-
ment. Plaintiff's inventions made during said three years while in
defendant's employ, whether they had ripened into patents or were
merely in the form of applications for patents, although under the
express agreement made between the plaintiff and defendant they be-
longed to and were its property, had not been transferred or assigned
to it, and the defendant did not have the legal title thereto, but they
stood in the name of the plaintiff. Upon leaving the defendant's em-
ploy, the plaintiff assumed to assign and transfer them to other par-
ties without any consideration being paid therefor, in disregard of
defendant's right, and in violation of the agreement which he had en-
tered into with it.

Shortly prior to September 5, 1898, the date of the contract in
question, plaintiff's venture in the city of New York having proved
unsuccessful or unsatisfactory, he returned to the city of Rochester
and again sought employment with the defendant. He acknowledged
that he had violated his agreement; that he had assumed to transfer
the inventions made by him, and which of right belonged to the de-

fendant, to other parties, but stated, in substance, that the assignments made by him had not been recorded in the patent office; that the purpose for which such transfers were made had failed; that there was no consideration for the same; and stated or expressed the opinion that the respective assignees would reassign the same to him.

The contract in suit was then executed. The purpose for which it was made is perfectly plain. The defendant expected that by the assignments from the plaintiff, which the contract provided for, it would secure the legal title to the property of which it was then the equitable owner, and, if that could thereby be accomplished, it was willing to give employment to the plaintiff for at least one year, and a one-quarter interest in the property, which it then owned as against him, when such term of employment should end. The plaintiff on his part expected to, and did, secure employment, and he also expected to secure a one-quarter interest in his inventions upon the termination of his employment, provided the assignments executed by him to the defendant were effectual for the purpose intended. We may not assume that it was the intention of the parties that the defendant should give to the plaintiff an interest in this property, in case it turned out that he was powerless to perfect defendant's legal title to the same, or to do any other act in respect to such property which would be of advantage to the defendant. This was exactly the situation which developed. The defendant discovered that the assignments made by the plaintiff, in violation of his agreement with it, had been recorded in the patent office by the respective assignees; that they each claimed to be the owner of the patents or inventions so assigned to them, and denied that the plaintiff or the defendant had, as against them, any right, title, or interest in or to the same. Therefore the defendant could not obtain the legal title to the inventions in question under the contract which it had executed, or by means of anything the plaintiff might or could do in the premises.

Thereupon, and in October, 1898, the defendant commenced an action in the Supreme Court, in which the plaintiff and all his alleged assignees were made defendants. It was alleged in substance in the complaint that the defendant (the plaintiff in that action) was the owner of the inventions in question, by reason of the agreement made at the time of the organization of the defendant corporation between it and this plaintiff, and appropriate relief was demanded. In May, 1899, the action was tried, and resulted in a judgment which adjudged, in substance, that this defendant (the plaintiff in that action) was the equitable owner as against the defendants, including this plaintiff, of the inventions in question, and the judgment required the defendants in that action to assign to this defendant all the interest which they or any of them had in or to said inventions. From that judgment an appeal was taken to the Appellate Division, and the judgment was in all things affirmed. 66 N. Y. Supp. 867. From such judgment of affirmance an appeal has been taken to the Court of Appeals, and is now pending.

Thus it has been judicially determined that at the time the contract in suit was executed the plaintiff had no interest in the inventions in question which he could assign or transfer to the defendant.

It has been judicially determined that at that time the defendant was the owner of such inventions, and that it, as matter of right, was entitled to an assignment by the plaintiff and his assignees of any and all interest which they or any of them claimed to have therein, wholly independent of the contract in suit, to the end that the defendant might thus acquire the legal, as well as the equitable, title to the property which it owned. Plaintiff's assignments of the invention in question to the defendant amounted to nothing—were no better than so much blank paper, because, as determined by the judgment of the court, he had nothing to assign; and such assignments were equally ineffectual to perfect the legal title of the defendant in and to such inventions. What was expected to be accomplished by such assignments failed, and the defendant was therefore required to resort to a suit in equity to accomplish the purpose for which the contract in suit was made.

It should be stated in this connection that at the time of the execution of the contract in question the legal title to a one-half interest in one of the patents in suit was in plaintiff's name; the other one-half interest having been assigned by him to Browne's wife. Such assignment, however, was made without consideration, and that patent, like all the others involved, in fact belonged to the defendant, by virtue of the agreement made when the defendant corporation was organized, as was determined by the former judgment of this court.

Upon the foregoing state of facts, we think it must be held that the agreement made by the defendant to assign to the plaintiff a one-quarter interest in the inventions and patents described in the judgment was wholly without consideration and void. The proposition cannot be more pointedly put than by saying that, at the time the contract was made which provided for an assignment by the plaintiff to the defendant of such inventions, he had nothing to assign, owned no inventions or patents, and had no interest in any. He was not in a position to do any act in connection with the subject-matter of the contract which could be of benefit to the defendant, that he was not legally and morally bound to do independent of such contract, and, as matter of fact, the defendant was obliged to accomplish through other means the purpose for which the contract was executed, to wit, the bringing and successfully maintaining an action in the Supreme Court, and which could not have been accomplished in any other manner, so far as the plaintiff was concerned.

In full compensation for his services for at least one year, the plaintiff was to, and did, receive from the defendant $35 per week. For vesting in the defendant his interest in the inventions in question the plaintiff was by the terms of the contract to be reinvested with a one-quarter interest upon leaving the defendant's employ. He had no interest in such inventions which by any act of his he could vest in the defendant. He did not even have the legal title to them, as it was supposed he had when the contract was executed, and so by his assignment the defendant obtained nothing, and could not obtain anything, by virtue of that part of the contract which this action was brought to enforce.

It is claimed, however—and it is stated in the opinion of the learned trial court to be a fact—that it was a part of the agreement between the parties, although in no manner alluded to or expressed in the written contract, that the defendant should commence an action or actions to enforce its rights in and to the patents or inventions in question, acquired by it by virtue of the original agreement, and "that the plantiff would be a witness for the plaintiff (this defendant) in the action or actions which were to be brought, and would testify and give evidence in behalf of ·the Folding Box .Company, for the purpose of recovering the patents in furtherance of their agreement"; and it is urged that, as the plaintiff was a witness and testified for and on behalf of the defendant in the action brought by it, in which it was successful, such agreement on the part of the plaintiff furnished a sufficient consideration to support the contract in suit.   We think it ought not to be held that such an agreement, if made, was sufficient as a consideration to render the contract valid. The defendant knew, independent of any information which it obtained from the plaintiff, that it was the equitable owner of the inventions and patents in question, by virtue of the agreement which had been made when the corporation was organized, and which induced it to transfer to the plaintiff and his associates $60,000 par value of its full-paid capital stock.   It therefore knew that the plaintiff had no right to sell or transfer such inventions, and that, if he had done so, it was in fraud of its rights; and, when informed that such transfers had been made by the plaintiff without consideration, the defendant had a right to assume that he would testify to the truth about the transaction, and it had the legal right to compel him to do so.   He ought not to be heard to say that it was necessary for the defendant to promise him a certain interest in its property for the purpose of inducing him so to do.   If it was, in fact, the understanding of the parties that the plaintiff should have an interest in such property, as a condition of giving testimony which would enable the defendant to establish its title thereto in an action brought for that purpose, such intention or agreement is contrary to public policy and ought not to be given force or effect by any court.   The agreement as claimed to have been made did not involve the expenditure of any time or the incurring of any expense by the plaintiff.   He was in defendant's employ when the action was commenced and tried. He was paid a weekly salary, and by the contract in suit had agreed to work for the defendant "faithfully and to further its interests in all ways."

The agreement which it is claimed was made between the parties, although not expressed in the written contract, and which it is now urged furnishes an adequate consideration therefor, is repugnant to every instinct of propriety and justice, as it in effect provides for pay as a consideration for giving evidence in an action which it is agreed shall be brought.   In the case of Lyon v. Hussey, 82 Hun, 15, 31 N. Y. Supp. 281, the rule is concisely stated in the headnote as follows:

"A contract to furnish evidence to establish the claim of one of the parties to an action about to be commenced is against public policy and will not be enforced."

Justice Van Brunt, in writing the opinion for the court, said:

"But it may be proper to call attention to the fact that part of the contract damages for the breach of which this action was brought to recover was to furnish evidence to establish the claim of the defendant in a litigation to be commenced. It is clear that such a contract is against public policy. The recognition of contracts of this character would be the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out a premium upon subornation. The mere statement of the proposition seems to show that such a contract could never be recognized in any court of justice."

We think the language of the learned justice which we have quoted is especially applicable to the case at bar.

Having concluded that that part of the contract which this action was brought to enforce is void, because without consideration, we deem it unnecessary to consider any of the other questions involved upon this appeal. It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide event. All concur.