HUGHES, APPELLANT, v. MULLINS, RESPONDENT.

(No. 2,456.)

(Submitted November 9, 1907.  Decided December 2, 1907.)

[92 Pac. 758.]

*Contracts—Illegality—Public Policy—Procurement of Testimony.*

Contracts—Illegality—Procurement of Testimony—Public Policy.
1. A contract by the terms of which plaintiff in effect agreed, for a consideration of $50,000, to furnish evidence which would enable defendant to either win two certain suits, or one of them, upon trial, or which would put the latter in such a position that he could force a favorable settlement of one or both of them, had a tendency to impede the due administration of justice and was, therefore, void as against the policy of the law.

Same—When not Severable.
2. Nor did a certain paragraph of the above contract constitute an independent agreement, not prohibited by law, when it provided that the knowledge plaintiff had of any testimony should be considered of sufficient value for the consideration of the "aforesaid sum of money" whether such testimony was used in court or not. Standing alone this portion of the contract was meaningless, while, if taken in connection with the remaining portion of it, it became plain. The agreement was not severable.

Same—When not Severable—Single Consideration.
3. The consideration for the contract set forth in the foregoing paragraph having been the lump sum of $50,000, and not a portion of that amount for certain acts and another portion for other things done, the contract was not severable, under the rule that, where the consideration to be paid for the performance of a contract is single and entire, the contract itself will be held entire and not severable, even though the subject of it should consist of several distinct and independent items.

*Appeal from District Court, Silver Bow County; Jno. B. Mc-Clernan, Judge.*

ACTION by Elmer Hughes against Pat Mullins. Judgment for defendant, and plaintiff appeals. Affirmed.

*Mr. John J. McHatton,* for Appellant.

If it could be said that there was any contract contained in the writing which was questionable on the ground of public policy, the contract upon which the plaintiff relies, and which is included therein, is separate and divisible from the balance of the agreement, and constitutes a contract between the plaintiff and defendant, wherein, at the defendant's solicitation and request, the plaintiff agreed that he would assist the defendant to obtain knowledge of what the testimony would be, · and that in consideration therefor, the defendant would pay him the sum of $50,000, and that the plaintiff performed his part of the contract, and assisted the defendant in obtaining said knowledge, and procured said knowledge for him. This agreement was separate and distinct and free from any taint, and the same should be enforced under the general doctrine that it, being separate and distinct from any objectionable portion of the agreements contained in the writing, constitutes a separate and distinct contract which is enforceable. (*Jackson* v. *Shawl,* 29 Cal. 267; *Treadwell* v. *Davis,* 34 Cal. 601, 94 Am. Dec. 770; *Granger* v. *Original Empire etc. Min. Co.,* 59 Cal. 678; *McVicker* v. *McKenzie,* 136 Cal. 660, 69 Pac. 495; 9 Cyc. 556, F, 564, par. 10, 569, par. 12.) It is held that where the illegality pertaining to a contract was unknown to the party performing, it does not vitiate the contract, and he is entitled to have the benefit thereof. (*Fox* v. *Rogers,* 171 Mass. 546, 50 N. E. 1041.) Mere knowledge of the intention to use a contract for illegal purposes does not prevent the party entering into it from enforcing it. (9 Cyc. 571, par. C.)

There is no rule of law or morals which would prevent a party entering into a contract for obtaining information.

The old rule of the common law with reference to matters of this kind has been very much modified. No better illustration can be called to attention than that with reference to champerty. Formerly all champertous contracts or agreements were void. An attorney could not, under the rule, agree to prosecute or defend an action when his compensation was dependent upon the result, or when he was to obtain a portion of the result as his compensation. Such is not the rule to-day. (*Ballard* v. *Carr*, 48 Cal. 74; *Davis* v. *Webber*, 66 Ark. 190, 74 Am. St. Rep. 81, 49 S. W. 822, 45 L. R. A. 196; *Richland County* v. *Millard*, 9 Ill. App. 396.) And we submit there is nothing in public policy which will prevent one person from employing another to obtain information with reference to existing facts upon an agreement to pay therefor. (*Wellington* v. *Kelly*, 84 N. Y. 543; *Chandler* v. *Mason*, 2 Vt. 193; *Cobb* v. *Cowdery*, 40 Vt. 25, 94 Am. Dec. 370; *Lucas* v. *Pico*, 55 Cal. 126; *Wood* v. *Casserleigh*, 30 Colo. 287, 97 Am. St. Rep. 138, 71 Pac. 360; *Harris* v. *More*, 70 Cal. 502, 11 Pac. 780.)

*Mr. T. J. Walsh,* and *Mr. John F. Davies,* for Respondent.

Citing on the question of divisibility of the contract in question: Note to *Huyett* v. *Chicago,* 59 Am. St. Rep. 277; *Nichols & Shepard Co.* v. *Charlebois,* 10 N. Dak. 446, 88 N. W. 80; *Forbes* v. *McDonald,* 54 Cal. 98; *Elliott* v. *Chamberlin,* 38 N. J. Eq. 604, 48 Am. Rep. 327; *Potsdamer* v. *Kruse,* 57 Minn. 193, 58 N. W. 983; *McVicker* v. *McKenzie,* 136 Cal. 656, 69 Pac. 495. The contract was against public policy. (*Quirk* v. *Mueller,* 14 Mont. 467, 43 Am. St. Rep. 647, 36 Pac. 1077, 25 L. R. A. 87; *Stanley* v. *Jones,* 7 Bing. 369; 9 Cyc. 500; *Goodrich* v. *Tenney,* 144 Ill. 422, 36 Am. St. Rep. 459, 33 N. E. 44, 19 L. R. A. 371; note to *Wood* v. *Casserleigh,* 97 Am. St. Rep. 138, 145; *Thomas* v. *Caulkett,* 57 Mich. 392, 24 N. W. 154; *Pollak* v. *Gregory,* 22 N. Y. Super. Ct. (9 Bosw.) 116; *Gillett* v. *Board,* 67 Ill. 256.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action on a contract to recover the sum of $50,000. The amended complaint alleges that in 1902 the defendant herein, Mullins, commenced two certain actions in the district court of Silver Bow county against the Boston and Montana Consolidated Copper and Silver Mining Company, designated in the records of that court as 10,209 and 10,211. In the first of these Mullins claimed in his complaint, in effect, that at one time he had a lease upon the Comanche lode mining claim with an option to purchase the same; that the Boston and Montana company procured one C. M. Allen to obtain from Mullins an undivided one-fourth interest in his lease and bond, and to become an ostensible partner with Mullins in exploring and developing the claim; that the money paid by Allen for such interest was furnished by the Boston and Montana Company; that Allen was not acting for himself, but for that company; that Allen and the company knew the mineral condition of the claim, and knew that it was very valuable, all of which facts were unknown to Mullins; that Allen misrepresented the value to, and concealed the real value of the property from, Mullins, and discouraged him from further operations under the lease and bond, and finally induced Mullins to sell his interest to a representative of the Boston and Montana Company, without knowing that he was doing so, for $7,500, the net amount which Mullins had expended upon the claim, while his interest was of very much greater value.

It is alleged that Mullins in his complaint had set forth at length the acts of fraud on the part of Allen and the company, which had resulted in Mullins parting with his interest in the lease and bond; that Mullins had prayed for an accounting for the value of ores extracted by the company, and that he be adjudged to be the owner of a three-fourths interest in the claim, and for a conveyance of such interest by the company. It is alleged that in the second of these suits Mullins had sought

to obtain a judgment for $100,000 for ores extracted from the claim by the company during the time that Mullins and Allen were working the same under the lease and bond.

This amended complaint then alleges that it was material for Mullins to know whether Allen would testify in accordance with the allegations of his (Mullins') complaint in case 10,209; that Mullins did not know what information Allen possessed; "that the defendant [Mullins] applied to the said C. M. Allen and to this plaintiff for information regarding the matters upon which he desired to procure evidence; that said defendant was informed by said plaintiff that he could assist him in producing such testimony or evidence, and that he would do so, provided the defendant entered into the agreement with him hereinafter alleged to compensate him for his services which might be rendered in producing the same, or in giving the defendant, or in assisting the defendant to obtain, knowledge of what such testimony would be"; that on March 19, 1903, Hughes and Mullins entered into an agreement in writing, only one paragraph of which contract is set forth. It is alleged that, acting under this agreement, Hughes and Allen furnished to Mullins the information which he desired, and that but for the agreement by Mullins to pay the sum of $50,000, he would not have obtained such information. It is then alleged that thereafter Mullins settled his suits for the sum of $150,000, and that Hughes demanded payment of the $50,000 mentioned in the contract, which demand was refused.

To this amended complaint a demurrer was interposed and overruled, and defendant Mullins then filed an answer, setting forth three separate defenses. This answer admits, by not denying, the commencement of the suits, against the Boston and Montana Company and the nature and character of the allegations in his complaints, but denies most of the other allegations of the amended complaint. It admits and alleges "that the defendant applied to the said C. M. Allen for information regarding the matters upon which he desired to present evidence at the trial of the actions brought by him against the said

Boston and Montana Consolidated Copper and Silver Mining Company, and avers the fact to be that prior to the time that he first saw, met, or had any business transactions whatever with the plaintiff the said C. M. Allen had given to the defendant information regarding the matters in relation to which he desired to submit evidence in the actions so instituted by him, the defendant, but defendant denies that he applied to the plaintiff for information regarding the said matters, and denies that the plaintiff had any information in relation to the same, or that the defendant ever imagined that he had.''

With respect to the circumstances surrounding the execution of the contract of March 19, 1903, the answer states: ''Denies that on or about the nineteenth day of March, 1903, or at any other time, the defendant did enter into with, execute, or deliver to the plaintiff any agreement in writing, except that on that day the plaintiff presented to the defendant an instrument in writing, of which a copy is hereto attached, marked 'Exhibit A,' and by this reference made a part of this answer, representing at the time to the defendant that he was the agent and representative of the said C. M. Allen, and that the said C. M. Allen would not testify at the trial of either of the actions begun by the defendant against the Boston and Montana Consolidated Copper and Silver Mining Company, or would not testify to the facts in said actions, or testify in such a manner in such actions as that his testimony would be of any service to the defendant herein, unless the defendant would sign the agreement so by him presented to this defendant, and that thereupon the defendant signed the same.''

The answer specifically denies that Mullins would not have received the knowledge or information in support of the allegations of his complaints in his suits against the Boston and Montana Company, which it is alleged he did receive, but for the fact that he entered into the contract of March 19, 1903, and agreed to pay Hughes $50,000. The answer denies that Mullins received $150,000 in settlement of his suits, but admits that he received $75,000.

For a second defense the answer sets forth at length the contract of March 19, 1903, designated "Exhibit A" above, as follows:

"Butte, Montana, March 19th, 1903.

"This agreement made and entered into this 19th day of March, A. D. 1903, by and between Patrick Mullins of Butte, Silver Bow Co., Mont., party of the first part, and Elmer Hughes of Missoula, Missoula Co., Mont., party of the second part,

"Witnesseth: That whereas the said first party now has pending in the courts of Montana certain mining suits affecting the Comanche mining claim, and whereas the said second party elects to furnish evidence in said suit or suits, it is hereby agreed: That in case evidence is produced that C. M. Allen, a party named in these suits was never the partner of the said party of the first part, but acted as agent for other parties in the working and sale of the lease and bond of the Comanche mine held by the party of the first part and that said C. M. Allen had full knowledge of the value of said Comanche mine, but concealed the same from said first party that he might so discourage said first party that he would turn over all his holdings in said Comanche mine to the parties that said C. M. Allen was representing, and that the said parties who were to receive said interests were fully conversant with all of these conditions and of the value of said Comanche mine. And this agreement witnesseth that if such testimony is produced that it will be conceded by said party of the first part that said second party has fulfilled his part of this agreement and it will not be incumbent upon said second party to prove that he produced it. And this agreement further witnesseth that in consideration of the faithful performance of the above named covenants by the said second party that said first party agrees to pay to the said second party the sum of fifty thousand ($50,000) dollars, as soon as any settlement of any kind is made on this or any one of said Comanche lawsuits now pending in the county of Silver Bow wherein said testimony is used between party of the

first part and the parties now in possession of the Comanche mine. And it is agreed, when it can be shown that settlements have been made between party of the first part and the defendants in said Comanche mining cases that no further evidence will be required to render said first party fully liable for the payment of the full amount of money mentioned above.

"This agreement binds the heirs and assigns of both the first and second parties to a faithful performance of all matters herein specified.

"It is further agreed that the knowledge of what said testimony is to be is considered of sufficient value to party of the first part that he hereby agrees that in case of settlement of any of the cases as above mentioned that the aforesaid sum of money will be paid to said second party whether the aforesaid testimony is used in court or not.

"It is further agreed that in case any lawsuits are brought against the witness that said second party shall at the time specify as the witness meant in this clause by the defendants of the Comanche lawsuits said cases being brought as a result of said testimony then the party of the first part agrees to defend all such cases fully and without any expense to said second party or his witness.

"PAT MULLINS.

"ELMER HUGHES.

"Witness to both signatures:

"WM. J. JAMESON."

A reply was filed, which consists of the following admissions: "Admits that said defendant received some information from said C. M. Allen with reference to the matters alleged in the complaint and in the contract referred to in said complaint; but denies that he received all or full information with reference thereto, and alleges that information was furnished to him and he received the same, as in said complaint set forth, and plaintiff avers that any information which said defendant had with reference to the allegations of his complaint was hearsay, and not from witnesses or parties who knew the facts; admits

that said C. M. Allen was to receive from plaintiff, after he had received the same, in case he should receive it, a portion of the amount agreed by the defendant to be paid, after the same was paid, and to that extent was interested, and that, to that extent it might be said that he represented said C. M. Allen in said matter and in the matter of said contract''; and of a denial of every allegation of the third defense.

Defendant then interposed a motion for judgment on the pleadings, which was sustained and a judgment rendered and entered in favor of the defendant, dismissing plaintiff's action and awarding defendant his costs. From that judgment this appeal is prosecuted.

But one question is presented for solution: Is the contract of March 19, 1903, void? The instrument is so vague in its terms, and apparently adroitly drawn for the purpose of concealing the real intentions of the parties, to such an extent that its meaning is difficult of determination. But, taking into consideration the circumstances surrounding the making of the contract as disclosed by the allegations of the answer which are admitted or not denied in the reply, it would appear to mean that Hughes agreed to furnish evidence, through the medium of Allen as a witness, in support of the allegations of plaintiff's complaint in the suit of *Mullins* v. *Boston & Montana Co.*, No. 10,209, and, in consideration therefor, Mullins agreed to pay Hughes $50,000 for the benefit of himself and Allen, contingent, however, upon a settlement of one or both of the suits, whether the evidence so furnished should be actually used in court or not; and further agreed that, in the event that any lawsuits should be brought by the Boston and Montana company against the witness, presumably Allen, whom Hughes should produce to give the desired evidence, by reason of such evidence being given, then Mullins would defend such suits without expense to Hughes or this veiled witness. In other words, Hughes contracted to furnish evidence which would produce one or the other of two results: (1) Win the suits, or one of them, upon trial; or (2) put Mullins in such a position that he could force a favorable

settlement of one or both of such suits. This is manifest from the fact that Mullins was not to become liable to pay anything until one or the other of these contingencies happened. That such a contract has a tendency to impede the due administration of justice, and is therefore void as against the policy of the law, was decided by this court in *Quirk* v. *Muller,* 14 Mont. 467, 43 Am. St. Rep. 647, 36 Pac. 1077, 25 L. R. A. 87; and we might well rest our decision upon the opinion in that case and the authorities cited. See, however, 9 Cyc. 500, where the later cases in harmony with the decision in *Quirk* v. *Muller* are collated. (See, also, note to *Wood* v. *Casserleigh,* 97 Am. St. Rep. 138, at page 145.)

But it is said that the written instrument of March 19, 1903, embraces independent contracts, or, rather, is severable, and that the portion quoted in plaintiff's amended complaint, to-wit: "It is further agreed that the knowledge of what said testimony is to be is considered of sufficient value to the party of the first part that he hereby agrees that in case of the settlement of any of the cases as above mentioned, that the aforesaid sum of money will be paid to said second party, whether the aforesaid testimony is used in court or not"—is a complete and independent contract, not prohibited by law and not against the policy of the law. But we are not able to agree with this contention. Standing alone, the part just quoted is meaningless; but, considered in connection with the remaining portions of the agreement, its meaning becomes plain, or at least as plain as any other portion of the contract or the contract as a whole. The paragraph was evidently intended to meet the second contingency mentioned above, and bind Mullins to pay in the event of a favorable settlement of either of his suits without trial. The portion of this contract intended to meet the first contingency above, or the favorable settlement after trial, in which the evidence to be furnished by Hughes should be used, is the following: "That said first party agrees to pay to the said second party the sum of fifty thousand ($50,000) dollars as soon as any settlement of any kind is made on this or any one of

said Comanche lawsuits now pending in the county of Silver Bow *wherein said testimony is used.* between party of the first part and the parties now in possession of the Comanche mine.''

Furthermore, this contract is not severable. There is but one consideration to pass from Mullins for whatever acts or things Hughes might do. Hughes was to receive $50,000 for whatever he did, not a portion of that sum for certain acts and another portion for different acts. We think a correct rule for determining whether a contract is entire or severable is announced in 2 Parsons on Contracts (eighth edition), page 517, as follows: ''If the part to be performed by one party consists of several separate and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. * * * And, if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items.'' (*Huyett & Smith Co.* v. *Chicago Edison Co.*, 167 Ill. 233, 59 Am. St. Rep. 272, 47 N. E. 384.) Practically the same rule is announced in *Nichols & Shepard Co.* v. *Charlebois,* 10 N. Dak. 446, 88 N. W. 80, as follows: ''Whether a contract is entire or severable depends, in general, upon the consideration to be paid, not upon its subject. If the consideration is single, the contract is entire; but, if the consideration is expressly or by necessary implication apportioned, the contract is severable. When the consideration is entire and single, the contract must be held to be entire, although the subjects may be distinct and independent items.'' And in this connection we call attention to section 2163 of our Civil Code, which reads as follows: ''If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void.''

We think this contract is an entire contract and void, as against the policy of the law.

In conclusion we quote from the opinion in *Quirk* v. *Muller,* above: ''We do not hold the contract void because it was an

agreement to procure perjury, or because it did procure perjury, but the contract had the tendency and opened the very strong temptation to the procurement of perjury."

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

