NEECE v. JOSEPH.

Opinion delivered June 6, 1910.

1. CONTRACTS—AGREEMENT TO PROCURE EVIDENCE.—A contract is void as against public policy by which one of the parties agrees to secure such testimony as will enable the other, to win an existing or contemplated suit. (Page 553.)

2. SAME—ILLEGALITY—ENFORCEMENT.—Where the ground of a promise on the one part, or the thing promised to be done on the other part, is unlawful, the courts will not enforce the contract for either party. (Page 555.)

Appeal from Lawrence Circuit Court, Eastern District; *Charles Coffin*, Judge; affirmed.

*Smith & Blackford* and *W. E. Beloate,* for appellant.

A written contract will be construed against the party who prepares it. 90 Ark. 88; *Id.* 256. The contract was valid.   15 Am. & Eng. Enc. Law. 979. All facts communicated by a patient to her physician are not privileged.   31 Ark. 693.

*J. N. Beakley* and *McCaleb & Reeder,* for appellee.

The contract was unlawful and can not be enforced. 48 Cal. 379; 82 Hun 15. It was contrary to public policy. 144 Ill. 422; 36 Am. St. R. 459; 52 Pac. 909; 1' D. Chip. 137; 10 Ala. 206; 14 Mont. 467; 43 Am. St. R. 647; 66 Ark. 535; 84 N. Y. 543; 7 Bing. 369; 67 Ill. 256.

HART, J.   T. C. Neece brought this suit in the circuit court against A. W. Shirey to recover an amount alleged to be due him under the following contract:

"Minturn, Ark., Feb. 27, 1906.

"This is an agreement an a contract made bye Dr. T. C. Neece and John Bennett, bye the consent and bye the request of A. W. Shirey, of the town of Minturn, wherein the sed T. C. Neece do agree to go with John Bennett and to find and furnish all the proofs that can be established bye the docttors wherein that thed sed Bell Shirey the wyfe of the sed A. W. Shirey did give birth to one child an oup on sed proofs furnished by the sed T. C. Neece, that Bell Shirey did live the State of Arkansas and give birth to sed child then an thare his fees and truble for such would be five hundred dollars wherein the sed John Bennett as A. W. Shirey agent, by consent of A. W. Shirey do agree to pay the sed T. C. Neece the five 500 hundred dollars as fees time a truble and expenses.

"Written and sind by John Bennett agt an emploid by A. W. Shirey."

The plaintiff testified in his own behalf, and also introduced as a witness John Bennett, who signed the instrument copied above. No evidence was offered by the defendant. The testimony of these witnesses is very voluminous, but its effect is to show that plaintiff knew that there was a divorce suit pending between defendant and his wife when the contract was made; that one of the contentions of defendant in that suit was that his wife had given birth to a child at some place unknown to him, and that he was not the father of it; that the testimony to be procured under the agreement was for use in that suit, and was so used.

The circuit court held that the agreement was contrary to public policy and void; and directed the jury to return a verdict in favor of the defendant, which was accordingly done.

From the judgment rendered the plaintiff has prosecuted an appeal to this court.

The defendant Shirey died testate during the pendency of the appeal, and the case has been duly revived in the name of the executor of his will.

The circuit court was right in holding that the contract was against public policy and void. The vice of the contract does not consist in the fact that the defendant employed the plaintiff to obtain evidence in his divorce suit; but the contract is, on its face, illegal because of the improper provision that the evidence to be procured should be of a given state of facts, of a tendency to enable defendant to win his suit. It will be observed that the contract did not provide for the payment of his services in procuring for use such testimony as actually existed, but it contemplated the procurement of evidence tending to establish a given state of facts, regardless of any other consideration. With reference to such contracts the Supreme Court of Montana held:

"A contract is void as against public policy if by it one of the parties agrees to secure such testimony as will enable the other to win an existing or contemplated suit. It is not necessary that the contract should contemplate the production of perjured testimony. It is void because its tendency is to

promote unlawful acts." *Quirk* v. *Muller,* 14 Mont. 467, 43 Am. St. Rep. 647.

In the opinion of the court in that case is contained a quotation from the Supreme Court of Illinois in the case of *Gillett* v. *Board of Supervisors,* 67 Ill. 256, which is so clear a statement of the reason for the rule that we repeat it here. The facts were that the county supervisors desired to overthrow the result of an election in regard to whether the county should subscribe for certain railroad bonds. They made a contract with a person to procure evidence to show that certain votes cast at such election were illegal, and the contract had a scale of prices, varying according to the number of votes that were proved to be illegal. The court said:

"The evidence disproved the actual use by the committee of any corrupt means or any corrupt design, on their part, in the use of the money. But the contracts themselves are pernicious in their nature. They created a powerful pecuniary inducement on the part of the agents so employed that the testimony should be given of certain facts, and that a particular result of the suit should be had. A strong temptation was held out to them to make use of improper means to procure the needful testimony, and to secure the desired result of the suit. The nature of the agreement was such as to encourage attempts to suborn witnesses, to tamper with jurors, and to make use of other 'base appliances' in order to secure the necessary results which were to bring to these agents their stipulated compensation. The tendency of such arrangement must be to taint with corruption the atmosphere of courts, and to pervert the court of justice. A pure administration of justice is of vital public concern. It tends to evil consequences that any such venal agency as is constituted by these contracts should have a part in the conduct of judicial proceedings, where the attainment of right and justice is the end. Should such contracts of this character receive countenance, we might, among the multiplying forms of agency of the time, have to witness the scandalous spectacle of a class of agents holding themselves out to the public as professional procurers of desired testimony for litigants in court for pay, contingent upon success in their suits. In *Marshall* v. *Railroad Co.,* 16 How. 314, it was held that a contract for a contingent compensation for obtaining leg-

islation was void by the policy of the law. With much greater reason, we think, should the contract under consideration be held vicious. We can not sanction them. On account of their corrupting tendency, we must hold them to be void, as inconsistent with public policy." See, also, *Patterson* v. *Donner,* 48 Cal. 379; *Lyon* v. *Hussey,* 82 Hun (N. Y.) 15.

We agree with the reasoning of the court in the above cited cases that contracts like the one under consideration are void as against public policy and as tending to impede the administration of justice.

"Where the ground of a promise on one part, or the thing promised to be done on the other part, is unlawful, the courts will not enforce the contract for either party." *Mendel* v. *Davies,* 46 Ark. 420. See also *Tatum* v. *Kelly,* 25 Ark. 209; *Ruddell* v. *Landers,* 25 Ark. 238; *Hencke* v. *Standiford,* 66 Ark. 535.

The judgment will be affirmed.