MATTISON, Respondent, *v.* CONNERLY, Appellant.

(No. 3,086.)

(Submitted September 9, 1912.   Decided September 16, 1912.)

[126 Pac. 851.]

*Indian Lands—Jurisdiction Over Allottees—Contracts—When Severable—Fence Posts—Fixtures—Verdict—When Conclusive—Evidence—Conclusiveness.*

Allotment of Indian Lands—Jurisdiction over Allottees—Record.
   1. In an action by an allottee of Indian lands to recover the contract price of fence posts, the claim that exclusive jurisdiction of the person of the plaintiff rested in the United States, under Act approved May 8, 1906 (Chapter 2348, 34 Stats. at Large, 182), providing that until the issuance of fee simple patents, exclusive jurisdiction over Indian allottees shall be in the United States, *held* without merit, it not appearing when plaintiff received her allotment, and the chapter above applying only to allottees receiving trust patents after the passage of the Act of May 8, 1906.

Contracts—When Severable.
   2. A contract for the lease of Indian lands and the sale of fence posts by the allottee to the lessee, *held* severable, where the lease was for one distinct sum and the sale for another, and where neither transaction was a consideration for the other.

Fixtures—Fence Posts—Intention of Parties.
   3. One of the elements entering into a determination of the question whether fence posts when set in the ground became a part of the realty or remained personalty, was the intention of the party putting them in place.

Appeal—Verdict—When Conclusive.
   4. On appeal from an order denying a new trial, the jury's finding, based upon conflicting evidence, is conclusive.

Conditional or Absolute Sale—Evidence—Admissibility.
   5. Evidence, in an action for the contract price of fence posts, that defendant used some of them was admissible in support of plaintiff's version that their sale was absolute, and not, as contended by defendant, conditional.

*Appeal from District Court, Flathead County; J. E. Erickson, Judge.*

Action by Alma Mattison against William Connerly. Judgment for plaintiff. Defendant appeals. Affirmed.

Cause submitted on briefs of counsel.

*Mr. H. P. Napton,* for Appellant.

*Mr. A. J. Lowary,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover $250, the contract price for certain fence posts which it is alleged were sold and delivered by the plaintiff to the defendant. The answer consists of a general denial, a plea of payment, and an allegation that at the time of making the contract the plaintiff was a Flathead tribal Indian, and an allottee of land from the United States, that the contract was made conditionally that it be approved by the United States, and that such approval was never obtained. The affirmative allegations were put in issue by reply. The trial resulted in a verdict and judgment in favor of plaintiff for the full amount demanded, and from the judgment and an order denying him a new trial the defendant has appealed.

1. It is insisted that the state court did not have jurisdiction [1] of the person of the plaintiff, and an Act of the Fifty-ninth Congress, approved May 8, 1906 (Chapter 2348, 34 Stats. at Large, 182), is relied upon to support this contention. So much of that Act as is pertinent here reads as follows: ''Until the issuance of fee simple patents all allottees to whom trust patents shall hereinafter be issued shall be subject to the exclusive jurisdiction of the United States.'' The Act of the Congress for the allotment of lands upon the Flathead Indian Reservation was approved April 23, 1904 (Chapter 1495, 33 Stats. at Large, 302), and in the opening paragraph provides that the Secretary of the Interior shall thereafter immediately cause the lands to be surveyed and the allotments to be made. This record is silent as to when the plaintiff received her allotment or her trust patent; and since the Act of May 8, 1906, above, applies only to allottees receiving trust patents after that date (*United States* v. *Kopp* [D. C.], 110 Fed. 160), the statute invoked cannot be made applicable so far as disclosed by this record. Under these circumstances, it is unnecessary for us to consider whether the con-

struction placed upon the Act by counsel for appellant is correct.

2. It is urged that the contract in question is void under section 5 of an Act of the Congress approved February 8, 1887 (Chap. 119, 24 Stats. at Large, 389; 3 Fed. Stats. Ann. 492). That statute provides for a trusteeship in the United States of the allotted lands for a period of twenty-five years, and then continues: "And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void." It is urged that this section is controlling because it appears from the evidence that the contract for the sale of the posts included also an agreement on the part of the defendant to lease plaintiff's lands which had been theretofore allotted to her. But by the Act of February 28, 1901, Chapter 383 (26 Stats. at Large, 794), Indian allottees were given permission to lease land under certain conditions and restrictions. Just what regulations were promulgated by the Secretary of the Interior is not made to appear; but it does appear that the lease as finally made was approved by the Indian agent in charge. In any event, the defendant went into possession of plaintiff's land, and had the use of it. Under these circumstances, we are not [2] prepared to say that the contract for the leasing of the land was void; but, even if it was, the contract was clearly severable, and the provision for the sale of the posts may stand. The lease was not a part of the consideration for the posts; neither was the sale of the posts a consideration for the lease of the land. The land was leased for one distinct sum, and the posts were sold for another. The only evidence touching the relationship between the two provisions is found in the testimony of the plaintiff that she told the defendant that, if he leased her land, he must purchase the posts, and that he agreed to do so. In *Hughes* v. *Mullins,* 36 Mont. 267, 13 Ann. Cas. 209, 92 Pac. 758, this question was before the court, and the rule was then announced as follows: "We think a correct rule for

determining whether a contract is entire or severable is announced in 2 Parsons on Contracts, eighth edition, page 517, as follows: 'If the part to be performed by one party consists of several separate and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. * * * And, if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items.' "

3. The evidence is sufficient to sustain the verdict if the jury believed the plaintiff's testimony, and that they did so is evidenced by the verdict returned. The plaintiff's theory was that the sale of the posts was complete and unconditional. The defendant insists that he agreed to purchase the posts and pay $250 for them only on condition that the Indian agent would approve the posts as satisfactory for the purpose of improving allotted land, and that he refused to give his consent. These theories were properly submitted to the jury, and with their determination thereon we cannot interfere.

4. Counsel for appellant insists that the posts were a part of [3] the allotted land, and therefore the contract was void. It is urged that the evidence discloses that the posts were set in the ground upon the land for the purpose of inclosing it, and complaint is made of the refusal of the trial court to give two offered instructions based upon that theory. However, the trial court did give an instruction which fairly covers the same subject. The instructions proposed were, and the one given is, erroneous to the prejudice of plaintiff; but since she was successful, she does not complain, and the defendant cannot predicate error upon the refusal of the court to give his proposed instructions which do not state the rule of law correctly. It will not do to say that a fence is a part of the freehold, or that because some of these posts were set in the ground upon the land they became a part of it. Whether they did or not become a part of the land depends upon circumstances other than those revealed by this rec-

ord.  The intention with which the fixture is attached or affixed to realty is always a pertinent inquiry in determining the status of what seems to be realty or personalty, as the case may be. (19 Cyc. 1045.)  The evidence is very uncertain as to who placed the posts in the ground, the number thus used, or the purpose for which they were used.  It does, however, appear that they were used upon an entire section of land, whereas the plaintiff owned but eighty acres.  There is not any assignment that the verdict is contrary to law, and further consideration of this subject is unnecessary.

5. It is insisted that the evidence fails to show that the [4] plaintiff ever owned the posts; but upon that subject the evidence is conflicting and the jury's finding is conclusive upon us.

6. Complaint is made of the action of the trial court in permitting the plaintiff to testify that the defendant actually used [5] some of the posts; but the evidence was clearly admissible as tending to support the plaintiff's version that the sale was an absolute one, the theory being that the defendant would not use the posts if he had not purchased them, and the fact that he did use them tends to support plaintiff's testimony that he had purchased them absolutely.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH did not hear the argument, and takes no part in the foregoing decision.