MANUFACTURERS & MERCHANTS INSPECTION BUREAU, Respondent, vs. EVERWEAR HOSIERY COMPANY, Appellant.

*November 2, 1912—January 28, 1913.*

*Appeal from Milwaukee civil court: Service of notice: Curing defects: General appearance: Evidence: Competency: Parol evidence affecting writings: Contracts: Acceptance: Illegality: Secret service: Procuring testimony: Contingent compensation: Public policy: Appeal: Error must be shown.*

1. A defect in an appeal from the civil court of Milwaukee county to the circuit court, arising from failure to serve the notice of appeal upon the judge of the civil court, is cured if, without any

motion to dismiss or other objection to the jurisdiction, the parties appear generally in the circuit court and try the case there *de novo.*

2. The terms of a written contract cannot be altered or varied by proof of a precedent valid oral agreement differing therefrom.

3. A letter which begins, "Confirming our verbal arrangement of June 27," and proceeds to state what each of the parties agrees to do, does not by reference to the "verbal arrangement" make that a part of the writing so as to permit proof thereof, but purports to give in the writing the true version of such precedent oral contract.

4. Silent acquiescence in such version of the contract by acceptance for several months of services rendered in accordance therewith, is as effectual to bind the party addressed as if there were an express written acceptance signed by him.

5. Where the issue was as to defendant's acceptance of services rendered by plaintiff under a contract to furnish certain persons who should enter defendant's employ and make to him certain reports, questions asked of defendant on his own behalf as to whether he retained the reports and whether he complained of the nature thereof, without any limit being specified as to time of return or of complaint, were properly excluded as immaterial and irrelevant.

6. Upon appeal, he who assigns error must affirmatively show error.

7. Parol evidence is competent to show that a writing valid upon its face is a mere cover for an illegal transaction.

8. Contracts to pay for collecting and procuring testimony to be used in evidence, conditioned upon the character of the testimony procured or upon the result of the suit in which it is to be used, are contrary to public policy and void, because of the inducements to fraud and perjury which they hold out.

9. A contract to render secret service to defendant in and about its manufacturing plant for the purpose of detecting acts of larceny and embezzlement, to report the persons guilty, and to apprehend them and bring them before defendant or its officers with the stolen goods in their possession, by the terms of which the payment of any compensation for such services is contingent upon the apprehension and production of such guilty persons with the stolen goods in possession, is *prima facie* illegal.

10. It is not necessary that the contingency upon which the compensation of the promisee depends should be the winning of a lawsuit, but any contingency that would have the same effect in instigating false charges or in inducing the promisee to stretch his evidence to a given mark in order to get his pay, would be the same in principle.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

*Albert M. Newald,* for the appellant.

*B. F. Saltzstein,* for the respondent.

The following opinion was filed November 19, 1912:

TIMLIN, J. This action at law upon contract was commenced and tried in the civil court of Milwaukee county, and appealed to the circuit court, where a new trial was had without objection or motion to dismiss the appeal from the civil court. The plaintiff recovered judgment in consequence of a directed verdict, and the appellant appeals, assigning error: (1) That the circuit court acquired no jurisdiction because the notice of appeal was not served upon the judge of the civil court. (2) The circuit court erred in excluding evidence in support of the averments in the answer.

With reference to the first error assigned it is sufficient to say that the parties, after the defective appeal from the civil court without any motion to dismiss that appeal or other objection to the jurisdiction, appeared generally and tried the case *de novo* in the circuit court. This conferred jurisdiction of the parties in any event, and of the subject matter of actions at law on contracts the circuit court always had jurisdiction. *Bull v. Christenson,* 61 Wis. 576, 21 N. W. 521; *Givans v. Searle,* 136 Wis. 608, 118 N. W. 202.

On June 29, 1910, plaintiff wrote to defendant:

"Confirming our verbal arrangement of June 27th, I will say that we will place an industrial and economic expert in your plant for the purpose of checking the general industrial conditions therein at the rate of $150 per month. This operative is to be placed upon your payroll at the same rate of wages that other workmen of his class are receiving. Whatever wages are to be paid to this man are to be deducted from the above mentioned sum, except wages earned by this operative by working overtime or on Sunday and holidays, and also any wages earned by him in excess of $3 per day, will

not be deducted.    It is further understood that this contract
can be terminated by either party at their option, however, a
week's notice is desired.    We take this opportunity of thank-
ing you for the business and assure you that the same is ap-
preciated."

The "verbal arrangement" referred to in this letter oc-
curred on June 27, 1910, and on this day one of the employ-
ees of the plaintiff began work for defendant.    The defend-
ant received the letter of June 29th on or about the day of its
date, but did not answer it.    It continued to accept the serv-
ices of this man and of other subordinates of the plaintiff who
came afterward, and the plaintiff began on June 29th making
daily reports in writing to defendant and continued this until
September 8, 1910.    The defendant received all these re-
ports.    The vice-president of the defendant, who had general
management of its factory and who claims to have had the
"verbal arrangement" with plaintiff, testified:

"After receiving this letter . . . the operatives of the
plaintiff company were placed in the employ of our company.
There were several of them.    Part of the time I placed them
at their respective duties myself; and that was after the re-
ceipt of this letter.    On each occasion when the plaintiff
would send in one of its operatives it would send him with a
letter of introduction to me.    I would read the letter and then
place the employee.    I received several of these letters of in-
troduction after the letter of June 29th and placed those men
upon those introductions.    Services were rendered by the
plaintiff's employees at the plant of the defendant between
these dates, June 27th and September 6th.    They did hosiery
work and submitted written and verbal reports on each day.
I received all these written and verbal reports; and the first
of the written reports was June 29th and the last was Sep-
tember 8th."

It also appeared that on August 31, 1910, the plaintiff sent
and defendant received a statement of account showing a bal-
ance due from defendant to plaintiff of $92.20, also one on
September 10, 1910, showing a like balance of $234.45, and

the vice-president of the defendant testified that this last was a correct statement of the services rendered at the rate of $150 a month, less deductions for wages paid to the men by defendant; in other words, corresponding with the quoted letter of June 29th.

The foregoing testimony was given while the witness was being examined on the part of the plaintiff as an adverse witness pursuant to sec. 4068, Stats. (1898). The defendant's counsel undertook what is called a cross-examination of this witness, in the course of which he asked the witness to state the terms of the oral contract or "verbal arrangement" referred to. The evidence was excluded, and this ruling is the principal ground of complaint on this appeal. So far as the ruling was based upon the ground that the terms of the letter of June 29, 1910, could not be varied or altered by parol evidence of a precedent valid oral agreement varying from the written agreement, the ruling was correct. There was ample proof of the acceptance of and acquiescence in the terms of the letter of June 29th for more than two months by acceptance of daily service thereunder. The letter in question does not, by reference to the "verbal arrangement," make that a part of the writing, but it purports to give in writing the true version of the precedent oral contract. If the defendant had signed its acquiescence at the foot of the letter in question there could be little doubt that parol evidence of a prior oral understanding varying this writing would be inadmissible. But assent by acceptance of the letter, acceptance of the services tendered after June 29th, with silent acquiescence in this version of the "verbal arrangement," is quite as potent to close a contract as a written declaration to that effect. Bills of sale, promissory notes, deeds, and many other writings are signed by one of the contracting parties and delivered to another, who receives the same and orally or by conduct acquiesces therein. This party cannot afterwards be heard to alter or modify the writing by proof of some antecedent oral

agreement which has become represented by and merged in the writing.  *Hooker v. Hyde,* 61 Wis. 204, 21 N. W. 52, and cases cited in opinion.  The witness was then asked whether he retained the reports received after June 29th from the plaintiff, whether he ever complained to the plaintiff regarding the nature of these reports, and whether he made any objection to the nature of these reports.  Objections to these questions were sustained.  There was no error in this ruling, because no time was fixed with reference to any of the questions, and objections to the nature of the reports were not relevant to the question of defendant's acceptance of the contract embodied in the letter of June 29th.  Neither could it affect this question if the defendant returned all the reports after it received plaintiff's bill.  He who assigns error must affirmatively show error.  After the plaintiff rested the defendant recalled its vice-president as a witness in its behalf and offered evidence, whereupon the court made substantially the same rulings.  The witness then further testified that after June 29, 1910, he had conversations with a representative of the plaintiff relative to the contract in question.  Being asked what the conversations were, counsel for plaintiff interposed an objection on the ground that the testimony sought to be elicited was incompetent, etc., and tended to vary the contract.  Although this ruling was correct so far as the evidence attempted to merely vary the writing by proving a different valid and controlling oral contract, there is another ground upon which the evidence first above ruled out might have been admissible.  Parol evidence is competent to show that a writing apparently good on its face is a mere cover for an illegal transaction; in other words, to show illegality.  *Twentieth Century Co. v. Quilling,* 130 Wis. 318, 110 N. W. 174.

"Contracts to pay for collecting and procuring testimony to be used in evidence, coupled with the condition that the contractee's right to compensation depends upon the character of

the testimony procured or upon the result of the suit in which it is to be used, have been universally condemned by the courts as contrary to public policy, for the reason that such agreements hold out an inducement to commit fraud, or procure persons to commit perjury." Note to *Hughes v. Mullins* (36 Mont. 267, 92 Pac. 758) 13 Am. & Eng. Ann. Cas. 209, 213. *Sherman v. Barton* (165 Mich. 293, 130 N. W. 626) 33 L. R. A. N. s. 87 and note; *Goodrich v. Tenney* (144 Ill. 422, 33 N. E. 44) 19 L. R. A. 371 and cases in note; *Neece v. Joseph* (95 Ark. 552, 129 S. W. 797) 30 L. R. A. N. s. 278 and cases in note; *Quirk v. Muller,* 14 Mont. 467, 36 Pac. 1077, 25 L. R. A. 87.

*Stanley v. Jones,* 20 Eng. Com. Law, 165, 7 Bing. 369, presented a case where the promisor believed he had been defrauded and that the promisee was in possession of evidence to make this manifest and to prove that the promisor was entitled to recover considerable sums of money from the persons who defrauded him, so he agreed to pay the promisee one eighth part of the clear amount of such sum as he might thereafter recover through the means of the promisee. This contract was held illegal, and it was thought that it amounted to the offense of champerty. It is also said that if there was any difference between this contract and champerty the difference was strongly against the legality of the contract, because "the bargain to furnish and to procure evidence for the consideration of a money payment *in proportion to the effect produced by such evidence* has a direct and manifest tendency to pervert the course of justice."

*Thomas v. Caulkett,* 57 Mich. 392, 24 N. W. 154, was where no litigation was pending or apparently contemplated, but the promisor considered that he had a cause of action arising out of injuries in a railroad accident, and procured the promisee, who was a physician, to go with him and lay the facts relative to the extent of his disability before the railroad company's counsel and medical advisers in consideration of a contingent fee. The physician did so, a settlement was

reached, and the physician sued for his contingent fee; but it was held that such contract was illegal and recovery was not allowed.

In *Neece v. Joseph*, 95 Ark. 552, 129 S. W. 797, 30 L. R. A. N. s. 278, it was held that a contract to secure evidence of a given state of facts which will permit the winning of a lawsuit is void as against public policy. It is said:

"A contract is void as against public policy if by it one of the parties agrees to secure such testimony as will enable the other to win an existing or contemplated suit. It is not necessary that the contract should contemplate the production of perjured testimony. It is void because its tendency is to promote unlawful acts."

In *Gillett v. Logan Co.* 67 Ill. 256, where the county authorities contracted with one McNeal to hunt up and prepare testimony for the county for a fee in part contingent upon the outcome of the case in which the testimony was to be used, the contract was held illegal. On account of its corrupting tendency it was considered against public policy.

In *Casserleigh v. Wood*, 119 Fed. 308, 56 C. C. A. 212, the contract is set out in the statement of facts preceding the opinion of the court, and it provides a contingent compensation to the promisee for disclosing evidence theretofore collected by him and then in his possession. The court said:

"While such contracts may at times result in the enforcement of rights that would otherwise be lost, yet we are persuaded that, as a general rule, they tend to disturb the peace of society and occasion suits that otherwise would not have been brought, and which ought not to have been brought. . . . We are also of opinion that, even if an action at law could be maintained for a breach of the contract, yet it is so far meretricious and tainted with illegality that a court of equity ought not to enforce it specifically."

In *Lyon v. Hussey*, 82 Hun, 15, 31 N. Y. Supp. 281, no litigation was pending, but the contract sued on was one to furnish evidence to establish the claim of the plaintiff in a

litigation to be commenced.    The court said: "It is clear that such a contract is against public policy."    See, also, *Langdon v. Conlin,* 67 Neb. 243, 93 N. W. 389, 60 L. R. A. 429, where the contract was between an attorney and another person by which the latter agreed to assist in looking after and procuring witnesses whose testimony was to be used in cases and to secure the employment of the attorney in such cases, all in consideration of a share of the fees which the attorney should receive for his services.    *Holland v. Sheehan,* 108 Minn. 362, 122 N. W. 1, 23 L. R. A. n. s. 510.

*Hughes v. Mullins,* 36 Mont. 267, 92 Pac. 758, 13 Am. & Eng. Ann. Cas. 209, presented the case of a written contract to procure evidence relating to a specified subject.    The compensation was contingent, but to be paid whether the evidence was used in court or not, and the evidence was of a nature tending to show that fraud had been perpetrated by a third person upon the party agreeing to pay the contingent compensation.    Quoting from *Quirk v. Muller,* 14 Mont. 467, 36 Pac. 1077, 25 L. R. A. 87, 43 Am. St. Rep. 647, the court said: "We do not hold the contract void because it was an agreement to procure perjury, or because it did procure perjury; but the contract had the tendency and opened a very strong temptation to the procurement of perjury."    The word "perjury" does not exhaust or limit the mischievous possibilities of such contracts.    If the contract is promotive of false charges which must in the end be supported by perjury or make the accuser liable, or even if it is only promotive of litigation by one having no interest in the litigation, it is against public policy.    *Cowles v. Rochester F. B. Co.* 81 App. Div. 414, 80 N. Y. Supp. 811; *Reynell v. Sprye,* 1 De G., M. & G. 660; *Rees v. De Bernardy,* [1896] 2 Ch. 437.

*Wilmoth v. Hensel,* 151 Pa. St. 200, 25 Atl. 86, 31 Am. St. Rep. 738, is the only case we find somewhat to the contrary, where a speaker at a political meeting declared that

he would pay $1,000 for the conviction of any person guilty of any violation of the election laws and also referred to a hand-bill offering a like reward signed by him as chairman of a committee.   The plaintiff, who was a railroad policeman, hearing of it, obtained from one Howard, a tax collector, a tax receipt running to a fictitious person and also a number of tax receipts in blank for which the plaintiff paid the other officer.   These tax receipts were for the purpose of qualifying fictitious or unqualified real persons as voters. Plaintiff then caused the arrest of the tax collector, who pleaded guilty, the judge suspended sentence, and plaintiff brought action against defendant, who set up various defenses, including that of illegality.   The contract was held valid, but the decision smacks more of politics than of law, and the jury was permitted to pass upon the motives of the parties.   So that in any event it is not conclusive of the instant case, which has not been submitted to the jury.

The exact contract to which the oral evidence is directed we must presume to be that pleaded in the answer.   This is stated as follows:

"It was agreed that the plaintiff should render secret service to the defendant in and about the plant of said defendant, . . . for the purpose of detecting acts of larceny and embezzlement of the goods in the factory of said defendant, to apprehend the person or persons guilty thereof, to report the same to the defendant and to produce to this defendant or its officers the person or persons guilty of such acts with the stolen goods in their possession."

The contingency was as follows: If the plaintiff should be successful in its investigation by in fact detecting such acts of larceny and embezzlement as aforesaid and apprehending the person or persons guilty thereof and reporting the same to this defendant and producing them before this defendant with the stolen goods in their possession, in such case the defendant should pay, etc.   To "apprehend the persons guilty" must be either to arrest them by regular process of law or

privately.    To produce to the defendant or its officers the person guilty with the stolen goods in his possession could only be done by inducing some person to make confession and appear before the defendant's officers or to forcibly take persons there.    The whole tendency of the contract is to induce the promisee, in order to earn his money, to make charges against and fasten upon other persons charges of larceny and embezzlement, and then in addition to this to assume the character of public officers and apprehend such persons and bring them before the officers of the defendant with the stolen goods, not on their person but in their possession.    We cannot assume the defendant was making this contract for the purpose of satisfying idle curiosity.    It had some serious motive.    If the plaintiff performed as required by the contract it became the public duty of the defendant to make complaint and institute a public prosecution and to give in the name of defendant or its employees as witnesses.    It might, on the other hand, have intended to settle privately with the guilty person and suppress the public prosecution; but in either case the tendency of the contract is to the commission of unlawful acts on the part of the parties to it, either a contract to procure evidence to produce a certain result or to induce the making of charges by the plaintiff in order to earn his fee, or to provide for traffic by plaintiff and defendant with persons guilty of larceny, to the private profit of defendant.    Further evidence may relieve this contract of its illegal features or confirm its illegality, but sufficient appears in the pleading to admit oral proof of the real consideration of the contract and to permit the introduction of the defense of illegality.

It is not necessary that the contingency upon which the compensation of the promisee rests should be the winning of a lawsuit.    Any other contingency that would have the same effect in instigating false charges or in inducing the promisee to stretch his evidence up to a given mark in order to get his

pay would be the same in principle. Here the service is to be secret, the act discovered must constitute larceny or embezzlement, the person accused must be apprehended and brought before the officers of the defendant, and there must be proof that the stolen goods are in his possession. If there were no fee contingent upon success, but a regular compensation, there could be no illegality about it. It is the contingent nature of the compensation, and its tendency to induce false charges and all the fraud and trickery of the private detective business, that *prima facie* stamps this contract with illegality. It follows that the judgment should be reversed and the cause remanded for a new trial.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on January 28, 1913.