## LUCE *v.* ENDSLEY.

### Opinion delivered October 11, 1920.

CONTRACTS—AGREEMENT TO PRODUCE EVIDENCE.—An agreement to produce evidence which would enable a person to win his suit, regardless of whether the testimony is to be true or false, is void as against public policy.

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*J. M. Carter,* for appellant.

The findings of the lower court are against the preponderance of the evidence. The service contemplated by the employment, while out of all comparison with the pay offered, was a legitimate service which he agreed to render, and if plaintiff fixed the price it was plaintiff's privilege and he can not complain. It was his contract, and he should not be allowed to defeat payment on the uncorroborated testimony of himself that it was bad morals. There is nothing in 115 Ark. 538 nor 108 *Id.* 171 that prevents defendant from pleading as payment the facts disclosed by the testimony.

*Pratt P. Bacon,* for appellee.

The finding of the court is in accord with the decided preponderance of the evidence and is right. It is not against the preponderance of the evidence. 138 Ark. 408; 130 *Id.* 465.

WOOD, J. This action was instituted by the appellants against the appellee. The foundation of the action

was a promissory note in the sum of $500 executed by appellant, H. O. Luce, to the appellee for a certain tract of land situated in Miller County, Arkansas, which was sold by the appellee to the appellant. A vendor's lien was retained and specified in the note, and the lands were described therein. The appellants, in their answer, admitted the execution of the note and alleged that the same had been paid.

Without entering into unnecessary detail, the facts are substantially as follows: One C. L. Bailey had sued the appellee in the Miller Circuit Court for damages in the sum of $10,000 on a charge of slander. Bailey alleged that the appellee had slandered him by charging that he (Bailey) had burned a negro church, and had stolen a mule from appellee. There was also pending in the Miller Circuit Court an indictment against one Green Allison, charging him with the crime of grand larceny and Bailey was the prosecuting witness. It was expected that these cases would be tried at the following June term of the Miller Circuit Court. Allison and appellee conferred together and agreed that they would consult with W. L. Luce and his son, H. O. Luce, concerning the trouble which Bailey had brought upon them.

The appellant testified in substance that the appellee came to his house and asked the appellant to do what he could for appellee to help him out in the case, and proposed to appellant to pay him for his services. Appellee was to give appellant the land note sued on and $100 in money for his services, and for that consideration he agreed to assist the appellee in the defense of Bailey's suit against him. Appellee told the appellant that he wanted him to come to Texarkana and stay with appellee through the court in the trial of the Bailey case and find out who the witnesses were for Bailey and what they were going to swear against him (appellee). Appellant was to find out all he could in the case. He went to court with the appellee on two different occasions. It was about thirty miles from where appellant lived to Texarkana where the court was held. The appellant

paid his own expenses going and coming. After the trial was over, appellee told the appellant that he was satisfied with what the appellant had done for him and told appellant to come down to appellee's house and he (appellee) would give the appellant the land note and $100 in cash. When appellant went to appellee's house to get the note and money, appellee told him that he had destroyed the note and that he did not have his check book at hand at the time, but that he could get the $100 at any time appellant wanted it. Appellant put in about four or five days in looking after the interests of the appellee in the suit and spent $25 of his own money in defraying his expenses while attending court and aiding appellee.

On cross-examination appellant was asked the following question: "What were you to do for this note and $100?" He answered, "I was to find out all I could and be all the help I could to him in that case; was to come up here and stay with him through the court—find out who the witnesses were if I could." Witness was asked if he interviewed a single witness to be used against appellee in the Bailey suit and answered that he had talked to Fernie Westbrook and others whom witness did not recollect. Westbrook told witness that he had forgotten what Bailey wanted him to swear and said that Bailey would have to ask him. Witness reported his conversation with Westbrook to appellee and his attorneys. Witness never attended any conference between appellee and his attorneys, but went to Texarkana when appellee went because appellee requested witness to go with him. Appellee did not ask witness to do anything for him while he was at Texarkana consulting his attorneys, and gave witness no reason for asking witness to go with him to Texarkana during the trial of the Bailey suit. Witness did nothing further than what he had already stated. Appellee expected witness to stay with him during the term of court. Witness further testified that he talked with Roy Collins and Isaac Thomas trying to find out for appellee at his request what Bailey had

to do, if anything, with the burning of a certain negro church in that community located on appellee's land. Appellee talked with witness frequently about the Bailey case and he seemed to be uneasy about it. He told witness that he had accused Bailey of stealing a mule from him and had accused him of burning the negro church, and said that he could not prove it; that, unless he could prove that Bailey stole the mule or burned the church, he was afraid Bailey would get judgment against him.

Witness was further asked the following question: "Were you under an agreement to furnish appellee with proof tending to show that Bailey stole the mule and burned the church?" He answered, "I was to do what I could to help Mr. Endsley out in the Bailey suit—not particularly that, but any information I could get." Witness was further asked: "Had Endsley not informed you that the question as to whether Bailey stole the mule and burned the church were the turning points in this case?" He answered, "He said that if he could prove that on him that he could beat the case." Witness was further asked: "Was that the proof that you were to furnish?" and answered, "I was to furnish any kind of proof that would help him out."

Witness Allison testified, in substance, that he heard appellee say to appellant, H. O. Luce, that he wanted him (Luce) to find out all about it that he could in the way of facts. Appellee proposed to pay Luce for his services. Appellee told witness that if appellant would help him out he would pay appellant what he agreed to pay him. Witness thought that appellee said he had agreed to pay appellant $500; that something was said about the land note. Witness further testified that he and appellee went down to see appellant and his father to get them to help him (Allison) and appellee out of their trouble. Witness stated that W. L. Luce was to work for him and H. O. Luce for the appellee. Witness agreed to pay W. L. Luce $500 and paid him $300. Witness stated that he hired W. L. Luce just like he hired

a lawyer to do all he could for witness to help him out. He did not ask W. L. Luce what he was going to do. H. O. Luce was to help the appellee out in the same way. Witness said: ''They proposed to help us through.''

W. L. Luce corroborated substantially the testimony of Allison and H. O. Luce as to the character of work that appellant was to do for the appellee. He said, in substance, that appellee wanted appellant to help him (appellee) out in every way that he (appellant) could— ''to ride and rustle for him and to stay with him through the courts.'' Witness further stated that his contract with Allison was to help him win his case if he could, and H. O. Luce was to help the appellee win his case if he could.

The appellee testified in his own behalf in substance that he had been informed by his attorney in the Bailey suit that it would be necessary for him (appellee) in the trial of that suit to prove, or introduce testimony tending to prove, that Bailey burned the church and that he had stolen the appellee's mule. It was to appellee's interest and Green Allison's to break down Bailey's testimony. He employed the appellant and Allison employed W. L. Luce. They were to get up testimony to break down Bailey's evidence, and if they could not get up that testimony ''they agreed to keep Bailey out of court; that was their business as to how they would do it, whether fair or unfair.'' Witness further testified that on the trial of the suit of Bailey against him for slander in the circuit court he (appellee) introduced no testimony tending to show that Bailey was connected in any way with the burning of the church or stealing of the mule except his own testimony. Neither appellee nor H. O. Luce were able to get any testimony on these points that amounted to anything. Appellee, in his testimony, admitted that he agreed to give appellant the $500 note in controversy to get up evidence to the effect that Bailey had burned the church and had stolen appellee's mule, but that he (appellee) had refused to give appellant the note because he had not done what he had agreed to do.

The court found among other things that the appellant agreed to produce evidence in the suit of Bailey against the appellee tending to show that Bailey burned a certain church and that he stole appellee's mule; that upon appellant's failure to produce such evidence he was to keep Bailey from attending the trial in the case of Bailey against the appellee; that the contract and agreement was void as against public policy. The court thereupon rendered a decree in favor of the appellee and against the appellant, from which decree is this appeal.

A preponderance of the evidence sustains the findings of the trial court. The appellee informed the appellant, H. O. Luce, that he had accused Bailey of stealing a mule from him and had accused him of burning the negro church, and that he could not prove it; that unless he could prove that Bailey had stolen the mule and burned the church he was afraid that Bailey would get judgment against him. The appellant promised to furnish appellee "any kind of proof that would help him (appellee) out." The testimony warrants the conclusion that the contract between the appellee and the appellant was that the appellee was to give to appellant the note in controversy in consideration that appellant would furnish testimony to the effect that Bailey had burned the church and had stolen appellee's mule, of which offenses appellee had accused him, and that if appellant could not furnish this testimony he would keep Bailey from appearing in court at the trial. Such being the nature of the contract as shown by a decided preponderance of the evidence, the case is ruled by *Neece* v. *Josephs,* 95 Ark. 552, where we held (quoting syllabus): "A contract is void as against public policy by which one of the parties agrees to secure such testimony as will enable the other to win an existing or contemplated suit." See, also, *Jᶜ sephs* v. *Briant,* 108 Ark. 180; *Josephs* v. *Briant,* 115 Arᵏ 545, and cases cited in the above.

A contract by one person to furnish another "any kind of proof that would help him out," that is, win his suit, regardless of whether the testimony is to be true

or false, contemplates subornation of perjury, which is a felony. Section 1972, Kirby's Digest.

The decree is in all things correct, and is therefore affirmed.