### GAINES and Wife *v.* MOLEN and Wife.

(*Circuit Court, E. D. Arkansas.* January, 1887.)

SPECIFIC PERFORMANCE—CONTRACT TO CONVEY LAND—CONSIDERATION—PUBLIC LANDS—COMPROMISE.

> The plaintiff, who, by reason of having purchased, inclosed, and cultivated a tract of land within the limits of the Hot Springs reservation, had an equitable claim to a patent likely to be recognized by the United States, executed a deed of conveyance of a subtract to the defendant, who had occupied and built on it, with the plaintiff's permission; the defendant at the same time executing an agreement to reconvey an undivided half of the subtract to the plaintiff within 30 days after the title should be acquired from the United States. The deed and agreement were executed in settlement of certain controversies between the parties, and it was agreed that the plaintiff should furnish the evidence necessary to enable the defendant to obtain the title from the United States. This the plaintiff did. *Held*, in a suit to compel specific performance of agreement to reconvey, that there was neither want nor illegality of consideration, and that plaintiff was entitled to a decree.[1]

In Equity.

*Davies & Rose*, for complainants.

*J. J. Murphy*, for defendants.

BREWER, J. This is an action to compel the specific performance of a contract to convey an undivided half of real estate in Hot Springs. It appears that on the fifteenth of May, 1876, the plaintiff William H. Gaines executed a quitclaim deed to defendant Joseph Molen, and on the

---

[1] The law favors the settlement of disputed claims, Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 29 Fed. Rep. 546, and note; and upholds them as considerations of the mutual covenants of the parties, Id; Baumier v. Antiau, (Mich.) 31 N. W. Rep. 888; Richardson & B. Co. v. Independent Dist., (Iowa,) 31 N. W. Rep. 871.

same day said defendant executed a contract to convey an undivided half interest in the property within 30 days after acquiring title from the government. Both instruments were dated the first of January, 1876. The deed was immediately placed on record, but the contract was kept secret until after the acquisition of title from the government. Both deed and contract recite a consideration of $400. The execution of both deed and contract and the acquisition of title are admitted, but the defendants plead both want and illegality of consideration. Of course, in face of the recitals in the contract, the burden of proof is on them to make good their defenses. The following facts are admitted by the defendants or are beyond dispute:

Both deed and contract were executed after the decision of the supreme court deciding that the title to the Hot Springs reservation was in the United States government, and not in either of the three existing claimants.[1] The land in controversy was within the limits of a tract of about 20 acres, which said plaintiff had purchased years before from one Mrs. Sabin, which tract had been inclosed and cultivated by him for a series of years. The defendant Joseph Molen had obtained permission, first from plaintiff Mrs. Gaines, and then from her husband, the other plaintiff, to occupy the ground in controversy, and build upon it, and he had a few months prior to these transactions built thereon a small house. Plaintiff William H. Gaines agreed to furnish the evidence to enable said defendant to establish his claim to the property, if an anticipated act for the benefits of the occupants of Hot Springs should be passed by congress; and, when the act of congress was passed creating the Hot Springs commission, said defendant filed his petition before the commission, asking the right to purchase, and said plaintiff did go before the commission, and give the testimony upon which the certificate of purchase was awarded to defendant; so that this plaintiff did comply with that agreement, which defendants insist was the sole consideration for this contract. It is probable that, prior to defendants' entry and building, the fence around the 20-acre tract above referred to had been taken away, and that the field was then open and uninclosed. The said plaintiff testifies that the house upon this ground was built by defendant Joseph Molen and his (plaintiff's) son, as partners, and that the accounts between these partners were settled and closed by this deed and contract. Defendant denies this, but admits that plaintiff's son furnished some material, and superintended the work, and that he had a settlement with plaintiff for such labor and materials.

In the opinion of the supreme court in the case in which the title of the three claimants to the Hot Springs reservation was declared void as against the government, it was intimated that congress, in any future disposition which it might make of the land, would doubtless recognize any equities in favor of these claimants, and it has since been decided by that court[2] that, in the act passed by congress for the disposition of the Hot Springs reservation, there was an intention to recognize these equities. It is also true that the ground surrounding the lots in controversy was awarded to the plaintiffs by the Hot Springs commission, and doubtless by

[1] 92 U. S. 698.　　　　[2] 111 U. S. 276, 4 Sup. Ct. Rep. 605.

virtue of their long occupancy of the 20-acre tract above referred to. It is also unquestionably true that, after the first decision of the supreme court, there was an expectation among the citizens of Hot Springs that congress would pass some act for the disposition of that reservation, and that occupation and improvement would be among the matters considered by congress in such disposition. Defendant, after receipt of title, several times promised to carry out his contract.

Upon these facts, I think it very clear that the claim of defendants that this contract was without consideration, or that the consideration was illegal, cannot be sustained. Obviously there was a settlement between the parties. The plaintiff William H. Gaines had some claims, as between himself and defendant, to the ground, and probably to the buildings, which were settled and adjusted by this deed and contract. He unquestionably had that prior occupancy which it was thought might be of value in the future acquisition of title from the government, and which in fact proved to be of value, the benefits of which the defendant sought to acquire, and did acquire. The plaintiff was not simply contracting to furnish testimony to support a claim of the defendant believed to be good, or believed to be fictitious; but he was contracting with a view of preserving his own rights, and uniting the claims of himself and defendant in the one person, for the greater convenience, and in the hopes of better success, in any proceeding which might be initiated. The fact that he contracted to furnish the testimony, and did in fact furnish it, works no estoppel as between himself and defendant. *Hobbs* v. *McLean,* 117 U. S. 567, 6 Sup. Ct. Rep. 870.

The contract which was made, was in no manner a violation of any act of congress, nor did it contravene any public policy. It was a contract between two parties who might possibly be contesting claimants under some future act of congress for a settlement of their respective claims. The case of *Southerland* v. *Whittington,* 46 Ark. 285, is very much in the point, and the decision of that learned court is in accord with the views I have expressed. See, also, *Lamb* v. *Davenport,* 18 Wall. 314.

A decree will be entered in favor of the plaintiffs as prayed for.