J. I. CASE THRESHING MACHINE CO. v. FISHER AND ANEY.

**Contracts:** BREACH OF CONFIDENTIAL RELATIONS. Defendants were engaged in selling machinery on commission, for both plaintiff and another company, under licenses from the manufacturers requiring that no sale be made at less than a specified price. Defendants represented to plaintiff that they could obtain machines on more favorable terms from the other company and plaintiff agreed to pay a larger commission if defendants could secure evidence that the other company was underselling them, and also to pay a stated sum upon proof that it had committed a breach of its license, which evidence was procured and turned over to plaintiff. *Held,* that no confidential relation existed between defendants and the other company, and that the contract was not illegal as a breach of such an agreement.

**Same.** Plaintiff's agreement to pay defendants for procuring evidence of the other company's breach of contract was not illegal;

as the procuring of the same had no reference to the outcome of a suit in which the evidence was to be used.

**Evidence:** STATEMENT OF AGENT. The statements made by one of plaintiff's agents to another regarding his efforts to obtain from defendants a contract between them and another company relating to the sale of goods, and which were within the scope of the agent's authority, were admissible against plaintiff.

**Practice:** SPECIAL VERDICT: NEW TRIAL. The court is not required to submit each of several items of a demand for a separate verdict, where there is no request for the same. And where a general verdict is returned embracing several items, the court may grant a new trial as to one of the items deducting the amount thereof from the general verdict, where it is plain the same was included.

**Compromise and settlement:** INTENT: INSTRUCTION. Where the evidence was conclusive that the notes sued upon were given for specific items of indebtedness in the usual course of dealing between 'the parties, and were not intended as a full settlement of account, refusal of an instruction to the effect that the giving of the notes raised a presumption that all accounts between the parties were thereby settled, was proper.

**New trial:** PRESUMPTION AS TO COURTS RULING. The presumption on appeal is strong in favor of the correctness of the ruling of the court in granting a new trial.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, Judge.

WEDNESDAY, SEPTEMBER 29, 1909.

ACTION on promissory notes. Counterclaims for commissions on the sale of machines for plaintiff and for money agreed. to be paid. ᵕ There was no defense to the notes, but on the counterclaims there was a trial to a jury and verdict in defendants' favor for $950.44. The court sustained plaintiff's motion for new trial so far as it applied to one of the items of counterclaim, and rendered judgment in defendants' favor for $577.27. Plaintiff appeals from this judgment, and defendants appeal from the

ruling granting a new trial as to the one item of counter-claim.   Plaintiff, having first appealed, will be designated the appellant.—*Affirmed.*

*Guernsey, Parker & Miller* and *Carey, Upham & Black,* for appellant.

*Read & Read,* for appellees.

McCLAIN, J.—Issues as to the three separate counter-claims were submitted to the jury, and the only questions presented on the appeals relate to the submission and determination of these issues.   The facts which were without dispute were that from 1900 to the time of bringing suit defendants were local agents for plaintiff at Underwood for the sale on commission of wind stackers manufactured by plaintiff.   Defendants were at the same time engaged in selling on commission for the Russell Wind Stacker Company similar machines.   Both plaintiff and the Russell Company were manufacturing these machines under licenses from the Indiana Manufacturing Company, and were bound under penalty not to sell for less than a specified price.   Defendants made to plaintiff's agent the claim that they could procure wind stackers from the Russell Company on more favorable terms than those given them by plaintiff for the sale of similar machines of plaintiff's manufacture.   The facts in dispute were as to whether plaintiff agreed to allow defendants additional commissions for machines of plaintiff sold during 1900 and 1901, if defendants could procure evidence that the Russell Company were selling similar machines at a lower price, and further agreed at a subsequent time to pay defendants $1,000 for evidence that the Russell Company was selling such machines on better terms than those on which the machines could be sold by the plaintiff under its license from the Indiana Company.

I. The significance of the alleged contracts to allow defendants additional commissions and pay them a further sum of money if defendants could procure evidence that the

1. CONTRACTS: breach of confidential relation.

Russell Company was selling wind stackers covered by the patent owned by the Indiana Company will be understood when it is stated that the plaintiff company was engaged in litigation with the Indiana Company in which it was important to plaintiff to show that the Russell Company was violating its contract with the Indiana Company to sell such machines on the same terms as those provided for in the license from the Indiana Company to plaintiff. The plaintiff as appellant contends that the alleged oral agreements above referred to were void because they contemplated a fraud to be committed by defendants towards the Russell Company, and a breach of trust between them existing by virtue of the confidential relations of principal and agent, also, because they contemplated and provided for a breach of contract between defendants and the Russell Company, and because they amounted to a conspiracy between defendants and plaintiff to bring about a breach of such contract and the contract between the Russell Company and the Indiana Company. It is further contended that these contracts relied on by defendants were illegal, in that they contemplated the procurement of evidence to be used by plaintiff in its suit against the Indiana Company. The evidence does not show, however, what the contract relations between defendants and the Russell Company were further than that defendants called themselves agents for the sale of machines for the Russell Company, and as such agents ordered a machine for sale on commission, agreeing to pay therefor, which order, accepted by the Russell Company, was turned over to the agent of plaintiff. These facts do not establish the breach of any confidential relations. There is no magic in the mere name of agent. A commission merchant is an agent, but he does not neces-

sarily occupy a position of trust and confidence to his principal. His obligation may be simply to act in good faith with reference to disposing of the property of his principal, and making payment therefor. There is no evidence that the Russell Company was to be cheated out of its property, nor that the price at which it could be sold was made confidential as a condition precedent to the making of the contract.

Had defendants been subpoenaed as witnesses in the suit between the plaintiff and the Indiana Company, they could without question have been required to testify as to their arrangement with the Russell Company, and we fail to see any good reason why they could not properly furnish the plaintiff the written evidence as to such arrangement. There was no fraud necessarily involved in dickering for the best terms to be procured, nor in making use of the terms secured in getting better terms from plaintiff. If, then, the plaintiff, on being satisfied that defendants were able to get better terms from the Russell Company than it was offering, saw fit to add a further commission on business already done for it by defendants as an inducement to them to abandon further relations with the Russell Company, there was nothing illegal in doing so. It does not appear that defendants had agreed to act exclusively as agents for the Russell Company in the sale of wind stackers; but, even if there was such exclusive agency, the plaintiff might negotiate for its abandonment without legal wrong.

The suggestion of illegality in an attempt to induce the Russell Company to violate its contract with the Indiana Company is wholly without force as to defendants' conduct, for it does not appear that they had any knowledge of the terms of such contract. So far as appears, they may properly have assumed that the plaintiff and the Russell Company were at liberty to compete as to the terms on which they would sell stackers, and take advantage of

such competition. The many authorities cited by counsel as to the good faith required from agents occupying a relation of trust and confidence toward their principals need not be specifically referred to. They announce well-recognized principles of law which as we think are without application to the facts of this case. Equally without application to this case are the authorities cited to the effect that it is a legal wrong to conspire in an attempt to induce another to break his contract. If the contract is one by its terms or in its nature terminable, there is no wrong in offering inducements to the party to terminate it in the interest of the person offering inducements for such action to his own advantage.

The claim that defendants committed a legal wrong in furnishing evidence to plaintiff for use in its suit against the Indiana Company is also without foundation. Cases are cited to the effect that it is illegal to agree to furnish evidence for a consideration to be paid only in the event that the party procuring the evidence is successful in his suit. *Gillet v. Supervisors,* 67 Ill. 256; *Quirk v. Muller,* 14 Mont. 467 (36 Pac. 1077, 25 L. R. A. 87, 43 Am. St. Rep. 647). But here there was no inducement held out to defendants to procure evidence that should accomplish a specific result. Defendants agreed that, if they got a contract with the Russell Company for better terms in the sale of wind stackers than those offered by plaintiff, they would disclose such fact with evidence thereof to plaintiff in return for an advantage to be given them in that event, and, when they had instruments and letters furnishing such evidence, they turned them over to plaintiff for an agreed sum. There was nothing in these transactions tending in the remotest way to the corruption of justice. The sufficiency of the evidence to support the verdict of the jury is questioned; but we need not discuss the evidence in detail. It is sufficient to say that there was enough to go to the jury, and

2. SAME.

the lower court did not err in refusing to set aside the verdict on this ground.

II. Certain evidence as to statements made by the general agent of plaintiff with regard to his efforts to procure from defendants a contract with the Russell Company was objected to by plaintiff, but the overruling of the objection was not error. The agent was still in the employ of the company, and was speaking to another officer or agent of the company in regard to his action in its behalf. His statements or admissions were plainly within the scope of his authority in the matter.

**3. EVIDENCE: statements of agent.**

III. The trial court did not err in submitting to the jury for one verdict the three items of counterclaim. There is no requirement of statute that the jury be required to return a separate verdict as to each of several causes of action or counterclaim unless a special verdict is requested. Notwithstanding the verdict was general as to the three items of counterclaim, the court did not err in granting a new trial as to one item of counterclaim and deducting the amount of that item from the general verdict, for it was plain under the record that the jury had included the amount of that claim in their general verdict, and, as to that item, the only controversy was as to whether anything was due. If the claim was found good to any amount, it must have been allowed in full. The court might, therefore, in the exercise of its discretion, deduct the amount which the jury had included in their verdict on account of this claim and render judgment on the general verdict for the balance, although it found error to have been committed in the method of submitting that claim to the jury. As to the two items thus covered by the judgment, there was no prejudice to plaintiff in granting a new trial on the other item of counterclaim.

**4. PRACTICE: special verdicts: new trial.**

IV. After the oral contracts on which defendants

predicate a counterclaim was made and, as defendants claim, had been performed by them, they executed to plaintiff the notes sued on in this action; and plaintiff asked an instruction to the effect that the execution of the notes raised the presumption that all accounts and claims then existing between the parties were settled and adjusted. There was no error in refusing this instruction. The evidence shows without the slightest conflict that the notes were given for specific items of indebtedness in the usual course of dealings between the parties, and were not intended to be settlements in full of account. To such a state of facts the rule embodied in the instruction asked has no application. Other assignments of error on plaintiff's appeal need not be considered in view of the conclusions already indicated.

5. COMPROMISE AND SETTLEMENT: intent: instruction.

V. The court below granted a new trial as to one of defendants' claims allowed by the jury on the ground that there was error in the instructions of the court relating to the effect of a subsequent settlement. It appears that this settlement, made at the end of 1901, related to commissions for business of that year, and commission certificates, so called, were issued to defendants for the amount found due on this settlement. The court instructed the jury with reference to the effect of this alleged settlement as bearing upon the additional rebate subsequently agreed to be made, limiting its effect to a rebate for one sale made in 1901. It is not clear from the ruling of the court in what respect this instruction was thought to be erroneous. But the presumption is strong in favor of the correctness of the action of the court in granting a new trial, and we are not able to say from the record so far as arguments of counsel throw any light on it that the court erred.

6. NEW TRIAL: presumption as to court's ruling.

The judgment is on both appeals *affirmed*.